UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

JANE RIECKMANN
9170 North Road
Fremont, Wisconsin 54940

      Plaintiff,

      vs.                  Case No: 14-CV-1370

BERGSTROM BUICK-GMC TRUCK, INC.    **JURY TRIAL DEMANDED**
d/b/a BERGSTROM AUTOMOTIVE
900 South Nicolet Road
Appleton, Wisconsin 54914

      Defendant.

## COMPLAINT

      COMES NOW the Plaintiff, Jane Rieckmann, by her counsel, WALCHESKE & LUZI, LLC, as and for a claim against the Defendant, alleges and shows to the court as follows:

      1.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this case involves a federal question under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

      2.      This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's state law claims, because they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

1

3. Venue in this District is proper pursuant to 28 U.S.C. §1391(b) and (c), because a substantial portion of the events or omissions giving rise to the claims occurred in this District, and Defendant has substantial and systematic contacts in this District.

4. Plaintiff, Jane Rieckmann, is an adult female resident of the State of Wisconsin residing in Winnebago County with a post office address of 9170 North Road, Fremont, Wisconsin 54940.

5. Defendant, Bergstrom Buick-GMC Truck, Inc., is a Wisconsin corporation with a principal office address of 900 South Nicolet Road, Appleton, Wisconsin 54914 (the "Appleton location.").

6. Defendant, doing business as Bergstrom Automotive, sells and services automobiles of various makes and models.

7. Upon information and belief, Defendant is owned by Bergstrom Corporation, which has a principal office address of 1 Neenah Center, Suite 700, Neenah, Wisconsin 54956.

8. Upon information and belief, Bergstrom Corporation operates Wisconsin automobile sales and service locations like Defendant in Neenah, Oshkosh, Milwaukee, Kaukauna, Madison, Green Bay and Fond du Lac (collectively, "Bergstrom locations").

9. Defendant, Bergstrom Corporation, and Bergstrom locations are collectively an "enterprise" engaged in commerce or in the production of goods for commerce as that term is used and defined by 29 C.F.R. § 1620.7.

10. Mrs. Rieckmann was employed by Defendant as a non-exempt, hourly employee at Defendant's Appleton location within the three years preceding the filing of this Complaint.

11. Ms. Rieckmann's last day of work at Defendant was August 22, 2014.

12. In or about February 2011, Defendant hired Mrs. Rieckmann as a Parts Driver based at Defendant's Appleton location.

13. As a Parts Driver at Defendant, Mrs. Rieckmann was a non-exempt, hourly employee and earned $10.00 per hour.

14. Mrs. Rieckmann was employed full-time (approximately forty (40) hours or more per work week) as a Parts Driver at Defendant.

15. As a Parts Driver at Defendant, Mrs. Rieckmann was responsible for taking stock that came in overnight to the Bergstrom Auto Body Shop or the Parts Department, transferring automobile parts between Bergstrom locations, delivering automobile parts to third-party entities in the Fox Valley area and beyond, and delivering automobiles to Bergstrom locations.

16. Mrs. Rieckmann's job duties and responsibilities required her to drive to different Bergstrom locations and third-party destinations on a day-to-day basis.

17. As a Parts Driver at Defendant, Mrs. Rieckmann was scheduled to work 7:30 a.m. to 4:00 p.m. with a half-hour lunch break.

18. As a Parts Driver at Defendant, Mrs. Rieckmann regularly did not take a lunch break on a daily basis from the beginning of her employment until on or about June 26, 2014.

19. As a Parts Driver at Defendant, Mrs. Rieckmann regularly worked after the scheduled end of her work day at 4:00 p.m., including necessary travel to Defendant's Appleton location at the end of each work day. Mrs. Rieckmann had to travel back to Defendant's Appleton location to return Defendant's vehicle that she used to complete her job duties and responsibilities during that day.

20. As a Parts Driver at Defendant, Mrs. Rieckmann reported to Andrew Potts, Parts Manager.

21. Prior to reporting to Potts, Mrs. Rieckman reported to "Moe" (last name unknown), the previous Parts Manager.

22. As a Parts Manager at Defendant, Potts reported to Gary Langkau, General Manager.

23. During Mrs. Rieckmann's employment with Defendant, Defendant did not maintain any policy, written or oral, stating that she had to request permission or authorization to work more than forty (40) hours in a workweek.

24. During Mrs. Rieckmann's employment with Defendant, she was not instructed to and never did request permission or authorization to work more than forty (40) hours in a given workweek.

25. Upon information and belief, other Parts Drivers employed by Defendant did not request permission or authorization to work more than forty (40) hours in a given workweek.

26. In or about late January or early February 2014, Potts completed a performance review of Mrs. Rieckmann. Potts did not give Mrs. Rieckmann his performance review of her.

27. In or about April 2014, Mrs. Rieckmann contacted Defendant's Human Resources Department by telephone. Mrs. Rieckmann spoke with Robin (last name unknown) and told her (Robin) that she did not receive a copy of her performance review. Robin then read to Mrs. Rieckmann her performance review submitted by Potts, including statements that Mrs. Rieckmann was a "hard worker," or words to that effect.

28. Defendant utilized computer software services provided by ADP to track the compensable time of Defendant's employees (the "ADP time-tracking system"). Defendant's employees accessed the ADP time-tracking system via Defendant's computers to clock-in to and clock-out of work each day.

4

29. Defendant assigned each of its employees a personalized employee number to access his or her profile on the ADP time-tracking system (the "ADP profile") and enter his or her clock-in and clock-out information. To access his or her ADP profile on the ADP time-tracking system, an employee needed to enter his or her personalized employee number, Defendant's store number where that individual worked, and the last four digits of the employee's social security number.

30. The ADP time-tracking system and any employee's ADP profile could be accessed through any of Defendant's computers. However, an employee required login and password information for one of Defendant's computers to access the ADP time-tracking system and his or her ADP profile.

31. Defendant assigned each of its employees, except Mrs. Rieckmann, a computer and login and password information for that computer to access the ADP time-tracking system and enter his or her clock-in and clock-out information each day.

32. Upon information and belief, Mrs. Rieckmann was the only employee of Defendant who was not assigned a computer to access the ADP time-tracking system from the beginning of her employment through on or about June 26, 2014.

33. Parts Drivers at other Begstrom locations were each assigned a computer to access the ADP time-tracking system.

34. When Mrs. Rieckmann needed to clock-in or clock-out each day prior to June 26, 2014, she asked another employee of Defendant to access her ADP profile on the ADP time-tracking system to enter her clock-in or clock-out time.

35. Mrs. Rieckmann asked more than one of Defendant's employees to enter her clock-in or clock-out information on the ADP time-tracking system throughout the course of her employment at Defendant.

36. Prior to June 26, 2014, Mrs. Rieckmann asked Potts to access her ADP profile on the ADP time-tracking system to enter her clock-in or clock-out information.

37. Mrs. Rieckmann observed the time Potts entered on her ADP Profile from his computer when she asked him to enter her clock-in or clock-out information. Potts repeatedly did not accurately record Mrs. Rieckmann's clock-in or clock-out time when he accessed her ADP profile to record her work time.

38. When Potts did not accurately record Mrs. Rieckmann's clock-in or clock-out time on her ADP profile, he stated his concern to Mrs. Rieckmann that she not record more than eight (8) hours in any work day to avoid incurring overtime compensation in that work week.

39. At the end of the work-week, Potts regularly reviewed the recorded clock-in and clock-out information on Mrs. Rieckmann's ADP profile. When Mrs. Rieckmann's total hours for the work week exceeded forty (40), Potts changed her recorded time so that it did not exceed forty (40) hours for the work week. When Potts changed Mrs. Rieckmann's recorded clock-in or clock-out information so that her total hours did not exceed forty (40) for the work week, he stated his concern that she not record more than forty (40) hours in any work week to avoid incurring overtime compensation.

40. When Potts changed Mrs. Rieckmann's recorded clock-in or clock-out information so that her total hours did not exceed forty (40) for the work week, Potts told Mrs. Rieckmann, "I'm going to try to get you as close to forty hours as I can," or words to that effect.

41. Mrs. Rieckmann regularly witnessed Potts login to access the ADP time-tracking system from his computer, pull up her ADP profile, and change her clock-in and clock-out hours to reflect a total of forty (40) hours or less worked for that week.

42. A few days prior to June 26, 2014, Mrs. Rieckmann approached Dorothy Lee, an Accountant in Defendant's Central Accounting Department, and described Potts' practice of inaccurately entering Mrs. Rieckmann's clock-in or clock-out time and changing Mrs. Rieckmann's clock-in or clock-out time on a weekly basis so that she (Mrs. Rieckmann) would not receive overtime compensation. In response, Lee told Mrs. Rieckmann, "I'm already one step ahead of you. I've gone to HR about it."

43. On or about June 26, 2014, Mrs. Rieckmann met with Langkau and Potts at Defendant's Appleton location ("the June 26, 2014 meeting").

44. During the June 26, 2014 meeting, Langkau told Mrs. Rieckmann that Defendant was assigning her a computer and providing her with login and password information to that computer so she could access the ADP time-tracking system and her ADP profile and enter her own clock-in and clock-out information each day.

45. During the June 26, 2014 meeting, Langkau presented a written statement to Mrs. Rieckmann stating:

> Jane Rieckmann will be getting her own login to punch in and out effective immediately. This will give her control of her working hours. It is agreed that Jane's current schedule is 7:30am-4:00pm with a 30 minute lunch break. Jane is not to clock in/perform work before 7:30am or work past 4:00pm (a two minute leeway is agreed (ex. 7:28am)), and a full 30 minute lunch break is required. This position is scheduled for 40 hours per week and Jane should only work more than 40 hours a week if it is asked by her Manger (sic) or General Manager. If Jane is tracking for overtime, the manager/General Manager may ask Jane to take a longer lunch break one day or leave a little before 4:00. If Jane comes to work early, she can "relax in the breakroom", (sic) but she should not perform any

7

> work until she clocks in at 7:30 unless agreed upon by Manager/General Manager. Any additional time that Jane is asked to work by per Manager/General Manager that would put her into overtime would be paid to Jane. If Jane has unapproved overtime (more than 10 minutes a week), she will be paid accordingly for the overtime, however she will be written up according to our Bergstrom policy.
>
> With this new set up, we are confident that Jane will be able to have the appropriate control of her hours and this should not continue to be a problem. If hours/punching in continue to be a problem after giving Jane control of her clocking in, we will follow the Bergstrom disciplinary action, which could include termination.

(the "June 26, 2014 statement").

46. When Langkau presented Mrs. Rieckmann with the June 26, 2014 statement, he explained to her that Defendant asked her to sign it "Based on issues of clocking in and we want to make sure we don't pay you overtime," or words to that effect.

47. Following the June 26, 2014 meeting, Mrs. Rieckmann called Lee at Defendant. Mrs. Rieckmann inquired of Lee as to the statement Langkau required her (Mrs. Rieckmann) to sign and the unpaid overtime Defendant owed her (Mrs. Rieckmann). Lee told Mrs. Rieckmann that when she (Lee) raised the issue of Mrs. Rieckmann's inability to enter her (Mrs. Rieckman's) own clock-in and clock-out information through the ADP time-tracking system with Leisl Britzke, Defendant's Human Resources Representative, Britzke told Lee, "Do whatever it takes to make Jane happy because she could be trouble for us."

48. Upon information and belief, Britzke's statement to Lee that Mrs. Rieckmann "could be trouble for us" was a reference to the merit of Mrs. Rieckmann's potential legal claim(s) against Defendant as a result of Potts' conduct.

49. On or about June 27, 2014, Defendant gave Mrs. Rieckmann a payroll check purporting to be compensation for overtime amounts owing to her (the "June 27, 2014 payroll check"). Defendant based the payroll check amount on 4.59 hours at $15.00 per hour.

8

50. Upon information and belief, the June 27, 2014 payroll check accounted for hours in excess of forty (40) that Defendant identified in the previous pay period.

51. Upon information and belief, the June 27, 2014 payroll check did not account for hours in excess of forty (40) in any other pay period than the previous pay period.

52. The June 27, 2014 payroll check did not compensate Mrs. Rieckmann for all the time she worked in excess of forty hours over her employment at Defendant.

53. Subsequent to the June 26, 2014 meeting, Potts closely followed Mrs. Rieckmann when she was at Defendant's Appleton location. Prior to the June 26, 2014 meeting, Potts did not so closely follow Mrs. Rieckmann at work.

54. For approximately two weeks following the June 26, 2014 meeting, Mrs. Rieckmann accessed the ADP time-tracking system and her ADP profile to enter her clock-in and clock-out information on the computer Defendant assigned to her.

55. Approximately two weeks after June 26, 2014, Defendant assigned another employee, Mike Ertl, to the computer assigned to Mrs. Rieckmann at the June 26, 2014 meeting.

56. Subsequent to Ertl's first day of employment at Defendant and Defendant assigning Ertl the computer assigned to Mrs. Rieckmann on or about June 26, 2014, Defendant did not assign Mrs. Rieckmann another computer.

57. By not assigning a computer to Mrs. Rieckmann, Defendant prevented and/or inhibited Mrs. Rieckmann from having timely access to the ADP time-tracking system and her ability to accurately record her clock-in and clock-out information.

58. By not assigning a computer to Mrs. Rieckmann, Defendant prevented and/or inhibited Mrs. Rieckmann from complying with Defendant's demands of her in the June 26, 2014 statement.

9

59. Subsequent to Ertl's first day of employment at Defendant and Defendant assigning Ertl the computer assigned to Mrs. Rieckmann on or about June 26, 2014, and for a period of approximately one week, Mrs. Rieckmann had to ask other employees and/or Potts to access her profile information through the ADP time-tracking system to enter her clock-in and clock-out information each day.

60. Approximately one week after Defendant assigned Mrs. Rieckmann's computer to Ertl, Ertl shared his computer password information with her so that she could access the computer Defendant assigned to him and the ADP time-tracking system. Subsequently, Mrs. Rieckmann either accessed the ADP time-tracking system on Ertl's computer or, if Ertl was assisting a customer through use of the computer, asked other employees to enter her clock-in and clock-out information in the ADP time-tracking system.

61. While employed by Defendant, Mrs. Rieckmann did not receive any discipline, whether verbal or written.

62. While employed by Defendant, Mrs. Rieckmann did not receive any negative performance reviews.

63. On or about August 22, 2014, Mrs. Rieckmann appeared for work as scheduled. Mrs. Rieckmann clocked-in and began loading stock pursuant to her job duties and responsibilities for Defendant.

64. On or about August 22, 2014, Potts asked Mrs. Rieckmann to meet with Langkau in his (Langkau's) office. Mrs. Rieckmann complied with Laugkau's request (the "August 22, 2014 meeting").

65. During the August 22, 2014 meeting, Langkau told Mrs. Rieckmann, "I feel really bad, but I have to let you go. You're the hardest worker I have here. We're not questioning your work ethic. But I've heard you have a bad attitude," or words to that effect.

66. During the August 22, 2014 meeting, Langkau did not provide any examples, an explanation of, or details for Mrs. Rieckmann's "bad attitude."

67. During the August 22, 2014 meeting, Defendant terminated Mrs. Rieckmann's employment.

68. Defendant's Bergstrom Automotive Team Member Handbook states in part:

> Overtime Pay
> In the service business, our guests MUST come first. The clock cannot always dictate our schedules – if a guest needs assistance at a certain time – we need to assist them no matter what time it is. Otherwise we would not have a business and be able to stay competitive within the market. If overtime becomes necessary, all team members are asked to cooperate with the requests of their supervisors/managers. Hourly team members (excluding those that are on a flat rate) are paid regular pay plus half of the regular pay (1 ½ times) for hours actually worked over 40 hours per week (holiday or vacation pay is not used to calculate overtime pay).

69. Mrs. Rieckmann is unable to precisely identify the amount of overtime worked and unpaid in each workweek at issue because she does not have access to records which are or should be in the possession of Defendant and which would show the precise amount of work performed by Mrs. Rieckmann.

70. Defendant's conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damage to Mrs. Rieckmann.

11

**FIRST CAUSE OF ACTION – VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED**

71. Mrs. Rieckmann realleges and incorporates paragraphs 1-65 of this Complaint by reference.

72. At all times material hereto, Mrs. Rieckmann was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et seq.*

73. At all times material hereto, Defendant was an employer of Mrs. Rieckmann as provided under the FLSA.

74. Defendant violated the FLSA by failing to account for and compensate Mrs. Rieckmann for overtime premium pay for each hour she worked in excess of forty (40) hours each workweek.

75. Defendant suffered and permitted Mrs. Rieckmann to perform compensable work before and after the end of her scheduled shift without pay for that work.

76. The effect of such practices was for Defendant to deny Mrs. Rieckmann her agreed upon wage for the hours worked that were not counted as work, including overtime wages for hours worked in excess of forty (40) hours in a workweek.

77. In perpetrating these unlawful practices, Defendant has also willfully failed to keep accurate records for all time worked by Mrs. Rieckmann.

78. The FLSA regulates, among other things, the payment of an overtime premium by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of good for commerce. 29 U.S.C. § 20(a)(1).

79. Defendant was and is subject to the overtime pay requirements of the FLSA because it is an enterprise engaged in commerce and/or its employees are engaged in commerce, as defined in FLSA, 29 U.S.C. § 203(b).

80. Defendant's failure to properly compensate Mrs. Rieckmann for all compensable work time was willfully perpetrated. Defendant has not acted in good faith or with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and as a result thereof, Mrs. Rieckmann is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to FLSA, 29 U.S.C. § 216(b). Alternatively, should the Court find that Defendant did not act willfully in failing to pay overtime premium pay wages, Mrs. Rieckmann is entitled to an award of pre-judgment interest at the applicable legal rate.

81. As a result of the aforesaid willful violations of the FLSA's provisions, overtime compensation has been unlawfully withheld by Defendant from Mrs. Rieckmann, for which Defendant is liable pursuant to 29 U.S.C. § 216(b).

82. Mrs. Rieckmann is entitled to damages equal to the mandated overtime premium pay within the three years preceding the date of filing of this Complaint, plus period of equitable tolling, because Defendant acted willfully and knew or showed reckless disregard for whether its conduct was prohibited by the FLSA.

83. Pursuant to FLSA, 29 U.S.C. § 216(b), successful plaintiffs are entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action for unpaid wages and overtime wages.

## SECOND CAUSE OF ACTION – RETALIATION UNDER THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED

84. Mrs. Rieckmann realleges and incorporates paragraphs 1-78 of this Complaint by reference.

85. Mrs. Rieckmann's statement to Lee described in paragraph 36 above stated her belief that Defendant was not properly compensating her pursuant to the FLSA and complained of unpaid work time.

86. Mrs. Rieckmann's statement to Lee described in paragraph 36 above constitutes "filing a complaint" within the meaning of the FLSA.

87. Defendant violated the FLSA, 29 U.S.C. § 215(a)(3) by terminating Mrs. Rieckmann's employment because she made a complaint against Defendant relating to its alleged violations of the overtime provisions of the FLSA.

88. FLSA, 29 U.S.C. § 216(b) makes an employer who violates FLSA, 29 U.S.C. § 215(a)(3) liable for such legal or equitable relief as may be appropriate to effectuate the purposes of Section 215 (a)(3), including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

89. Defendant retaliated against Mrs. Rieckmann by terminating her employment for exercising her rights under the FLSA, 29 U.S.C. § 201 *et seq.*

## THIRD CAUSE OF ACTION – VIOLATION OF WISCONSIN WAGE PAYMENT AND COLLECTION LAWS – UNPAID OVERTIME

90. Mrs. Rieckmann realleges and incorporates paragraphs 1-84 of this Complaint by reference.

91. At all relevant times, Mrs. Rieckmann was an employee of Defendant within the meaning of Wis. Stat. § 109.01(1r).

92. At all relevant times, Mrs. Rieckmann was an employee of Defendant within the meaning of Wis. Stat. § 103.001(5).

93. At all relevant times, Mrs. Rieckmann was an employee of Defendant within the meaning of Wis. Stat. § 104.01(2)(a).

94. At all relevant times, Defendant was an employer of Mrs. Rieckmann within the meaning of Wis. Stat. § 109.01(2).

95. At all relevant times, Defendant was an employer of Mrs. Rieckmann within the meaning of Wis. Stat. § 103.001(6).

96. At all relevant times, Defendant was an employer of Mrs. Rieckmann within the meaning of Wis. Stat. § 104.01(3)(a).

97. At all relevant times, Defendant was an employer of Mrs. Rieckmann within the meaning of Wis. Admin. § DWD 272.01(5).

98. At all times material hereto, Mrs. Rieckmann regularly performed activities that were an integral and indispensable part of her principal activities without receiving compensation for these activities.

99. At all times material hereto, Defendant had common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing to properly pay Mrs. Rieckmann overtime compensation.

100. The foregoing conduct, as alleged above, constitutes a willful violation of the Wisconsin Wage Payment and Collection Laws ("the WWPCL").

101. Defendant willfully failed to pay Mrs. Rieckmann overtime premium compensation for all hours worked in excess of forty (40) hours a week, in violation of the WWPCL.

102. As set forth above, Mrs. Rieckmann sustained losses in her compensation as a proximate result of Defendant's violations. Accordingly, Mrs. Rieckmann seeks damages in the amount of her respective unpaid compensation, injunctive relief requiring Defendant to cease and desist from its violations of the Wisconsin laws described herein and to comply with them, and such other legal and equitable relief as the Court deems just and proper. Under Wis. Stat. § 109.11, Mrs. Rieckmann may be entitled to liquidated damages equal and up to fifty percent (50%) of the unpaid wages.

103. Mrs. Rieckmann seeks recovery of attorneys' fees and the costs of this action to be paid by Defendant, pursuant to the WWPCL.

**FOURTH CAUSE OF ACTION – VIOLATION OF WISCONSIN WAGE PAYMENT AND COLLECTION LAWS – FAILURE TO PAY AGREED UPON WAGE**

104. Mrs. Rieckmann realleges and incorporates paragraphs 1-98 of this Complaint by reference.

105. Mrs. Rieckmann has been entitled payment from Defendant at the agreed upon wage, as defined in Wis. Stat. § 109.01(3), for each hour worked by Mrs. Rieckmann pursuant to Wis. Stat. § 109.03.

106. Defendant violated the WWPCL by failing to properly compensate Mrs. Rieckmann for each hour she worked and willfully engaged in inaccurate timekeeping as described above.

107. As set forth above, Mrs. Rieckmann sustained losses in his compensation as a proximate result of Defendant's violations. Accordingly, Mrs. Rieckmann seeks damages in the amount of her unpaid compensation, injunctive relief requiring Defendant to cease and desist from their violations of the Wisconsin laws described herein and to comply with them, and such other legal and equitable relief as the Court deems just and proper. Under Wis. Stat. § 109.11,

16

Mrs. Rieckmann may be entitled to liquidated damages equal and up to fifty percent (50%) of the unpaid wages.

108. Mrs. Rieckmann seeks recovery of attorneys' fees and the costs of this action to be paid by Defendant, pursuant to the WWPCL.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Issue an Order, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, declaring Defendants' actions as described in the Complaint as unlawful and in violation of the FLSA and Wisconsin Law and applicable regulations and are and were willful as defined in the FLSA and Wisconsin Law;

2. Issue an Order directing and requiring Defendant to pay Mrs. Rieckmann damages in the form of reimbursement for unpaid overtime wages for all time spent performing compensable work for which she was not paid pursuant to the rate provided by the FLSA and WWPCL;

3. Issue an Order directing and requiring Defendant to pay Mrs. Rieckmann damages in the form of reimbursement for unpaid agreed upon wages for all time spent performing compensable work for which she was not paid pursuant to the rate provided by the FLSA and WWPCL;

4. Issue an Order directing and requiring Defendant to pay Mrs. Rieckmann liquidated damages pursuant to the FLSA and WWPCL in an amount equal to, and in addition to the amount of wages and overtime wages owed to her;

5. Issue an Order directing and requiring Defendant to reinstate Mrs. Rieckmann to her former position without any loss of seniority or benefits;

6. Issue an Order directing and requiring Defendant to pay Mrs. Rieckmann damages in the form of back pay from the time of his termination until the date of her reinstatement as a result of Defendant's unlawful termination of Plaintiff;

7. Issue an Order directing Defendant to reimburse Mrs. Rieckmann for the costs and attorneys' fees expended in the course of litigating this action, pre-judgment and post-judgment interest; and

8. Grant to Mrs. Rieckmann whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**

Dated this 30th day of October, 2014.

                                                                                     WALCHESKE & LUZI, LLC
                                                                                     Counsel for Plaintiff

                                                                                    **s/ *Jesse R. Dill***
                                                                                    James A. Walcheske, State Bar No. 1065635
                                                                                    Scott S. Luzi, State Bar No. 1067405
                                                                                    Jesse R. Dill, State Bar No. 1061704

WALCHESKE & LUZI, LLC
200 South Executive Drive, Suite 101
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
jdill@walcheskeluzi.com